HALPERN MAY YBARRA GELBERG LLP
  Marc D. Halpern (CA Bar No. 216426)
  A. Carley Palmer (CA Bar. No. 307303)
  Gwendolyn M. Toczko (CA Bar No. 255984)
550 South Hope Street, Suite 2330
Los Angeles, California 90071
Telephone: (213) 402-1900
marc.halpern@halpernmay.com
carley.palmer@halpernmay.com
gwendolyn.toczko@halpernmay.com

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAKELIAN ENTERPRISES, INC., d/b/a ATHENS SERVICES, | Case No. |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| | **<u>Jury Trial Demanded</u>** |
| AIG SPECIALTY INSURANCE COMPANY, | |
| Defendant. | |

COMPLAINT

## COMPLAINT

Plaintiff Arakelian Enterprises, Inc. d/b/a Athens Services ("Athens") for its complaint against AIG Specialty Insurance Company ("AIG") alleges as follows:

1. Athens is a prominent waste disposal company doing business throughout the Los Angeles and Inland Empire areas of Southern California. One of the services that Athens has provided in recent years is disposal of green waste through land application on private property. This is a method of disposal that has been both approved and highly encouraged by the State of California as an environmentally friendly practice and that has been utilized by many waste companies like Athens.

2. Athens brings this action to address and enforce the defense coverage obligations of its primary pollution liability insurer, AIG, for a series of related lawsuits brought against Athens by property owners in the region of Antelope Valley, California. These lawsuits involve various claims pertaining to Athens's land applications and alleged environmental harms from those materials and practices. AIG agreed to defend the first of the lawsuits, under various alleged reservations, but then as the additional, even broader claims were brought against Athens regarding the land applications, AIG started refuting and denying coverage.

3. With these land application lawsuits now resulting in significant defense costs for Athens, and AIG refusing coverage for all the larger lawsuits, Athens has been forced to bring this action to enforce its coverage rights. Accordingly, Athens is suing AIG for declaratory relief as to AIG's defense obligations under the policies at issue, as well as damages for breach of contract and bad faith.

COMPLAINT

## PARTIES

4.      Plaintiff Arakelian Enterprises, Inc. d/b/a Athens Services is a California corporation with its principal place of business located in the County of Los Angeles, State of California.  Athens Services, which is a fictitious business name of Arakelian Enterprises, Inc., operates under said name in compliance with applicable law.

5.      Certain other individuals and entities related to Athens who also are insureds under the AIG policies are defendants in the underlying actions, and are defended by the same counsel as Athens, paid for by Athens.[1]  For simplicity, those parties are not included in this action as the coverage sought from AIG by Athens would address the entirety of the defense.

6.      Defendant AIG Specialty Insurance Company is an insurance company that, on information and belief, is an Illinois corporation with its principal place of business in Chicago, Illinois.

7.      Upon information and belief, at all relevant times, AIG was doing business within Los Angeles County, California, and was issuing policies covering activities within Los Angeles County, California.

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over AIG pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and California Code of Civil Procedure Section 410.10 by virtue of the facts alleged herein.

9.      This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of costs.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b).

---

[1] For example, Athens Disposal Services, Athens Disposal Company, Inc., and Ronald Arakelian.

COMPLAINT

2

**PRELIMINARY ALLEGATIONS**

A.    **The AIG Policies**

i.    **Many Years Of AIG Pollution Liability Coverage, Including The Most Relevant 2020 Policy**

11.    AIG has been providing Athens's primary liability coverage for many years, including pollution legal liability (or "PLL") coverage—which is an important coverage for waste management companies (the "AIG Policies").  Year after year, these AIG liability policies would run from March 1st of the issuing year to March 1st of the following year.

12.    The main AIG policy at issue in this litigation is for 2020 through 2021—*i.e.,* March 1, 2020, to March 1, 2021—and has Policy No. EG6439324 (the "2020 Policy").[2]

13.    Some terms of the 2020 Policy and other referenced AIG policies are discussed below.  The terms of the AIG Policies from 2018 forward are incorporated by reference into the Complaint.[3]

ii.    **The PLL Provisions And Relevant Policy Limits**

14.    The PLL coverage in the 2020 Policy is "Coverage D." [4]   Like most of the other coverages in the 2020 Policy, the PLL coverage provides AIG with a duty to defend.

---

[2] Many of the AIG policies issued to Athens have the same policy number and are most easily differentiated by year.

[3] The 2020 Policy and other referenced AIG Policies are not attached due to their volume but can be provided upon request.  On information and belief, AIG has copies of all the cited AIG policies.

[4] The 2020 Policy also contains other lines of coverage which are not the current focus of Athens' claims, but for which Athens reserves all rights—such as non-pollution bodily injury and property damage coverage (Coverage A), personal and advertising injury (Coverage B), and additional medical expense coverage (Coverage C).

COMPLAINT

15.    Specifically, the 2020 Policy provides that AIG has "the right and duty to defend the insured" against claims.[5]  Under governing California law, this provision and the other relevant defense provisions in the 2020 Policy require that AIG provide defense coverage for any claim that gives rise to any *potential* for coverage whatsoever, and regardless of merit.  Furthermore, this defense obligation requires an immediate defense to protect the policyholders and extends to defense of the entire lawsuit (or other claim) triggering the duty to defend.

16.    As to some of the specifics of the PLL coverage in the 2020 Policy, Coverage D broadly insures against loss arising from "pollution conditions," including bodily injury, property damage, clean-up costs, and emergency response costs, for both on-site and off-site conditions, so long as the claim is first made and reported during the policy period.[6]

17.    Most relevant to the underlying land application lawsuits, Section 1(c) of Coverage D addresses non-owned locations, such as where the land applications took place.[7]  That section requires, *inter alia*, that "[AIG] will pay loss that the insured becomes legally obligated to pay as a result of claims for: (i) Clean-up costs resulting from pollution conditions on or under the non-owned location or bodily injury or property damage of parties other than … employees of the non-owned location … or (ii) For bodily injury, property damage or clean-up costs resulting from pollution conditions, beyond the boundaries of the non-owned

---

[5] "Claims" are broadly defined to include any "written demand seeking a remedy or alleging liability or responsibility on the part of the insured for loss."  The defined term "loss" includes compensatory and punitive damages, civil fines, defense costs and clean-up costs.  On information and belief, there is no dispute that the underlying actions at issue are all "claims".

[6] There is another qualification, not relevant here, pertaining to a Retroactive Date.  The Retroactive Dates listed in the 2020 Policy predate the alleged harms at issue.

[7] Coverage D Sections 1(a) and 1(b) insurer against claims for injury or damage on Athens' property or migrating from Athens property.  Accordingly, these sections are not currently the focus of Athens' coverage claims, with all rights reserved.

COMPLAINT

4

location, that migrated from the non-owned location, provided such pollution conditions did not first commence before the Retroactive Date … and the claim … is first made … during the policy period."

18.    The 2020 Policy includes a "Blanket Non-Owned Locations Endorsement" that extends coverage for pollution conditions at any U.S. or Canadian property not owned, operated, or managed by Athens, provided the property is not a waste facility.  All the locations at issue in the underlying actions fall within this definition.[8]

19.    The broad definitions in the 2020 Policy for the terms used in the PLL coverage section discussed above confirm the breadth of allegations that would give rise to any potential for coverage—and thus AIG's duty to defend.  For example, the types of alleged "pollution conditions" that could trigger coverage include any "discharge, dispersal, release or escape … of pollutants into or upon land, the atmosphere, or any watercourse."  Such "Pollutants" are defined broadly to include "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."

20.    Meanwhile, covered "Bodily injury" from alleged pollution conditions broadly includes "sickness, disease, mental anguish, shock or emotional distress." Covered "Property damage" includes both physical injury to tangible property and "loss of use" of such property.

21.    Also relevant here, the 2020 Policy provides certain occurrence-based (as opposed to "claims-made") pollution legal liability coverage—the "Additional Pollution Legal Liability" of Coverage E.  Occurrence-based coverage is generally triggered by the dates of the occurrences allegedly resulting in injury or damage—

---

[8]  Not relevant here, but even waste facilities not owned by Athens are covered, subject to certain criteria.

5                                                      COMPLAINT

so if migration of pollutants allegedly takes place over many years, then many years of coverage may be triggered.[9]  This type of coverage contrasts with "claims-made" coverage, where the triggered policy is typically the policy in effect when the claim was first made.

22.    Coverage E includes several potentially relevant lines of coverage, given the broad scope of the underlying actions, including Section 2 for Products Pollution liability, Section 3 for Contractors Pollution liability, and Section 4 for Transported Cargo liability.

23.    With these various coverages in the 2020 Policy, the Policy provides multiple separate applicable limits, resulting in tens of millions of dollars of potentially applicable coverage.

24.    Specifically, Coverage D and some sections of Coverage E provide a single combined $10 million limit applicable to the underlying actions.  Other parts of Coverage E, including Section 3, are subject to a separate $10 million general policy aggregate.  Meanwhile, Coverage E Section 2 has its own separate $2 million aggregate limit.  These different limits may all be triggered simultaneously.

25.    The 2020 Policy further provides that some of the limits apply separately to each location at issue.

### iii.    The Related-Claim Provisions That Trigger The 2020 Policy For All The Underlying Actions

26.    The 2020 Policy contains "related claims" provisions that result in all the underlying claims giving rise to the potential for coverage under Coverage D of the 2020 Policy—and requiring AIG to provide defense coverage under that policy.

---

[9] Here, the 2020 Policy defines the triggering "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."

COMPLAINT

27. The 2020 Policy provides that all "claims for loss arising from the same, related or continuous pollution conditions . . . shall be deemed to have been first made against the insured and reported to us during this policy period."

28. These provisions require that once a claim is first made and reported (such as the first *Blenkhorn* lawsuit discussed below), all later related claims (such as the other land application lawsuits discussed below) are deemed made at the same time and trigger the 2020 Policy. This Coverage D in the 2020 Policy is triggered for all the claims at issue.

29. Although the claims-made coverages in subsequent AIG Policies are not relevant because the underlying actions are a related claim first made during the 2020 Policy, it is worth noting that even if the claim first had been made during those later policies (which it plainly was not), AIG would still be required to defend Athens.

30. Besides incorrectly asserting that later policies may govern, AIG has incorrectly contended that certain "PFAS" exclusions that only exist in those policies bar the potential for coverage—but those exclusions would not even apply to the underlying lawsuits. As discussed further below, AIG simply has no valid or reasonable basis for refusing to defend Athens from the underlying pollution liability claims.

      **iv.**    **The Occurrence-Based Coverage E Also Should Be Available Beginning With The 2018 Policy**

31. In relevant part, the AIG Policy issued to Athens for March 1, 2018, through March 1, 2019 (the "2018 Policy") and subsequent AIG Policies contain equivalent occurrence-based additional pollution legal liability coverage (Coverage E in the 2020 Policy).

32. Because those coverage parts are triggered by the date of the alleged occurrences, and the underlying claims allege pollution harms dating back to the

7

COMPLAINT

2018 Policy period and thereafter, those lines of coverage in other AIG Policies also may be triggered for additional coverage.

33.    Indeed, with respect to the first underlying action, the *Blenkhorn* lawsuit discussed below, AIG has acknowledged the potential for coverage under the 2018 Policy (while incorrectly ignoring that the potential for coverage also exists under the 2020 Policy under the provisions identified above).

**B.    The Underlying Land Application Environmental Actions[10]**

      **i.    *Blenkhorn*—The Claim First Made During The 2020 Policy**

34.    The first underlying action at issue is *Blenkhorn et al. v. Arakelian Enterprises et al.*, Case No. BCV-20-102652 (Kern County Superior Court), which was filed on or about November 9, 2020 (the "*Blenkhorn* Action").[11]

35.    The *Blenkhorn* Action was brought by Les Blenkhorn, the owner of a property that received deposits of land application materials from Athens. The lawsuit was brought on behalf of Mr. Blenkhorn and putatively also on behalf of similarly situated property owners impacted by land application pollution issues.

36.    The *Blenkhorn* Action complaint alleges that defendants, who include Athens and others, improperly deposited thousands of tons of waste material on Mr. Blenkhorn's property and neighboring parcels, leading to pollution conditions at and around those properties. The complaint contends, *inter alia*, that the deposited materials include substantial amounts of plastics and other materials within the green waste land application that contributed to the pollution.

---

[10] Together, the *Blenkhorn* lawsuit, the *Brown & Mroz* RCRA notice and subsequent lawsuit, the *Brown* lawsuit, and the *Mroz* lawsuit, all described further below, are the "Underlying Actions" at issue in this Complaint.

[11] The *Blenkhorn* Action complaint and the allegations therein are incorporated by reference into this Complaint.

COMPLAINT

37. The complaint targets a wide area in the Antelope Valley region, alleging that Athens's deposited materials dispersed by wind across many square miles, resulting in widespread pollution damage.

38. The complaint also alleges that, in November 2018, trucks entered Mr. Blenkhorn's property without permission to conduct land application activities, and that he suffered various distress and other personal injuries as a result.

39. The *Blenkhorn* Action asserts causes of action for trespass, private nuisance, public nuisance, negligence, and strict liability for ultrahazardous activity.

### ii.    AIG Agrees To Defend *Blenkhorn*

40. The *Blenkhorn* Action was tendered to AIG on or about November 24, 2020.

41. In its substantive response, about 8 months later, on July 21, 2021, AIG agreed to defend *Blenkhorn* under an alleged reservation of rights.

42. AIG focused its coverage response on the 2018 Policy and the occurrence-based Coverage E triggered by when alleged occurrences took place, rather than on the 2020 Policy claims-made Coverage D triggered by when the *Blenkhorn* Action was filed.

43. Notwithstanding various inaccuracies in some of its analysis and the failure to address all the relevant coverages, AIG still had agreed to provide a defense for the entire *Blenkhorn* Action, as required.

44. For the defense, AIG retained attorneys at Gordon Rees. The *Blenkhorn* Action remains pending, and that defense is ongoing.[12]

---

[12] Athens has raised various issues with AIG regarding how the defense has been conducted, including AIG improperly delaying or withholding approval for various needed activities, and Athens reserves all rights to include any such issues as part of its bad faith claims in this action.

9                                                           COMPLAINT

### iii.    The *Brown & Mroz* RCRA Action Containing Related Land Application Pollution Claims

45.    A couple years into the *Blenkhorn* Action, while little activity had occurred in that case, Athens began receiving additional, similar claims alleging pollution liability from its land application activities in the Antelope Valley region, including claims involving many of the properties potentially at issue in the *Blenkhorn* Action's class allegations.

46.    The first of these related actions was a December 3, 2024 Notice of Intent to Sue under the Resource Conservation and Recovery Act by Kristina Brown and Ashley Mroz (that ultimately turned into the *Brown & Mroz* RCRA lawsuit discussed further below).[13]  The notice was directed to Athens and other waste management companies in the region.

47.    Like the *Blenkhorn* Action, the RCRA notice alleges that Athens improperly included various polluting materials in its green waste land applications, causing various pollution damage.  The RCRA notice referenced an even broader set of harms than *Blenkhorn* from the same set of activities—including, *inter alia*, alleged harms from spread of particulates, leaching into soil and groundwater, and toxic fumes affecting nearby communities.

48.    Likewise, the notice warns that Athens's green waste land application practices pose significant environmental and health risks and states that, absent corrective action, the claimants intend to pursue a lawsuit seeking injunctive relief, civil penalties, attorneys' fees, and other remedies under federal and state environmental laws.

49.    The RCRA action notice was timely tendered to AIG—and was denied as discussed below.

---

[13] The RCRA notice and the allegations therein are incorporated by reference into this Complaint.

COMPLAINT

10

### iv.     The *Brown* Action

50.     Shortly after the RCRA notice, some of the same lead complainants started filing related civil lawsuits against Athens (and other entities).

51.     The first lawsuit, captioned *Kristina Brown et al. v. Arakelian Enterprises, Inc*. et al., Case No. 24STCV133877 (Los Angeles Superior Court) (the "*Brown* Action") was filed on December 23, 2024.[14]

52.     The *Brown* Action complaint again alleges that Athens improperly misclassified and disposed of non-green waste materials through land application near the *Brown* plaintiffs' residences throughout the Antelope Valley region, resulting in various pollution on and around the properties.  The complaint asserts that these practices caused pollution damage to plaintiffs' air, land, groundwater, and homes.

53.     The *Brown* Action was timely tendered to AIG—and was denied as discussed below.

### v.     The *Mroz* Action

54.     A few weeks later, on January 31, 2025, the related lawsuit *Ashley Mroz et al. v. Arakelian Enterprises et al.*, Case No. 2:24-cv-10254 (Central District of California) (the "*Mroz* Action") was filed against Athens (and other entities).[15]

55.     The *Mroz* complaint again alleges similar pollution misconduct and liability as the related *Blenkhorn*, RCRA, and *Brown* Actions, in roughly the same geographical region, and from similar sources.

56.     The *Mroz* Action was timely tendered to AIG—and was denied as discussed below.

---

[14] The *Brown* Action complaint and the allegations therein are incorporated by reference into this Complaint.

[15] The *Mroz* Action complaint and the allegations therein are incorporated by reference into this Complaint.

COMPLAINT

**vi.** **Having Received Multiple New Related Claims, And Now Facing Significant Additional Defense-Costs Liability, AIG Immediately Starts Denying Defense Coverage**

57. AIG was quick to respond to the sudden influx of additional related Underlying Actions. The same day the *Mroz* Action was filed, January 31, 2025, AIG sent Athens a denial of any duty to defend for the RCRA claim and the *Brown* Action. A practically identical denial of the *Mroz* Action with no additional material analysis was sent to Athens several weeks later.

58. To reach these results, AIG conducted what appears to be a cursory and incorrect analysis concluding that there could be no potential for coverage.

59. To start, notwithstanding the clear relatedness to the *Blenkhorn* Lawsuit, AIG did not appear to even consider the 2020 Policy or any earlier policies.

60. Rather, AIG concluded the 2024 Policy would determine its coverage obligations and applied a Perfluorinated Compounds (PFAS) exclusion in that policy to contend there could be no coverage. Aside from reviewing the wrong AIG Policy and thus the wrong policy language (e.g., the 2020 Policy does not even have a PFAS exclusion), AIG's application of the PFAS exclusion to the Underlying Actions is unsupportable and unreasonable. The Underlying Actions do not even concern PFAS pollution.

61. Nor did AIG properly consider the occurrence-based pollution liability coverage in its policies, or the breadth of the Underlying Actions' allegations as applied to the low potential for coverage standard for triggering the duty to defend.

62. Based on AIG's cursory and unfounded analysis denying coverage, it is clear AIG has no intent of properly considering its defense coverage obligations for the ever-growing set of related land application claims against Athens. Instead, it appears that AIG was determined to try to limit its liability by simply denying

12

COMPLAINT

coverage outright for the new matters—and essentially forcing Athens to sue for any further defense coverage.

### vii.    AIG Revises Its Position For Blenkhorn

63.    Further revealing AIG's new "close the door" approach to its coverage obligations for the Underlying Actions, a couple weeks after denying coverage for the new Underlying Actions, on February 12, 2025, AIG suddenly also issued an alleged modification to its original *Blenkhorn* coverage response.

64.    Without any material new information on which to alter its original coverage response for the *Blenkhorn* Action, AIG issued a "supplemental" reservation of rights letter that narrowed its coverage stance and asserted that most of the previously acknowledged potential coverage no longer applied.

65.    AIG agreed to continue providing a defense in the *Blenkhorn* Action, but noted that the defense was limited to the alleged emotional distress from the truck entering Mr. Blenkhorn's property without permission, and did not extend to the actual pollution liability claims that comprise the bulk of the lawsuit and overlap with the other Underlying Actions.

66.    Again, AIG appears to have been shoring up its efforts to deny defense coverage for the other Underlying Actions, rather than conducting a proper or meritorious analysis of its defense coverage obligations.

### viii.    The *Brown & Mroz* RCRA Lawsuit And AIG's Denial

67.    Thereafter on April 3, 2025, complainants in the RCRA notice filed the federal court RCRA action captioned *Brown and Mroz v. Arakelian Enterprises, Inc. et al.*, Case No. 2:25-cv-2855 (Central District of California).

68.    The *Brown & Mroz* RCRA lawsuit concerned the same general alleged conduct and conditions identified in the preceding RCRA notice, which again relate to the other Underlying Actions.  Meanwhile, the lawsuit included considerably more detail and specific allegations.

COMPLAINT

69.     Athens again timely tendered the new Underlying Action to AIG.  By letter dated July 15, 2025, AIG responded to deny all coverage, by all appearances conducting no further analysis and just reiterating the same position as for the RCRA notice (notwithstanding the many additional allegations)

**C.     AIG Must Defend The Underlying Actions Under The 2020 Policy—And Its Denials Of Defense Coverage Were Plainly Improper**

70.     The *Blenkhorn* Action filed in November 2020 alleges, *inter alia*, that Athens and others caused pollution conditions on and emanating from non-owned properties in California's Antelope Valley by depositing thousands of tons of construction and green waste via land application.  The *Blenkhorn* complaint alleges that a multitude of non-green waste materials such as construction debris were present in the deposited land application, causing pollution injury and damage in the vicinity of the property where deposited.  The *Blenkhorn* complaint also alleges that the materials then blew across a wide area of other properties, resulting in additional pollution injury and damage.[16]

71.     Many of the allegations of *Blenkhorn* thus fall squarely within the pollution liability coverages of the 2020 Policy described above, and certainly raise the potential for coverage requiring a defense from AIG.

72.     Likewise, because the *Blenkhorn* lawsuit was filed in November 2020, the claim was first made during the 2020 Policy period, triggering the claims-made coverage provisions of the 2020 Policy.

---

[16] The *Blenkhorn* lawsuit also contains other more plaintiff-specific allegations, for example, regarding the *Blenkhorn* plaintiff's alleged distress resulting from improper entry onto his property, as land application materials (intended for a neighboring property) incorrectly had been deposited on his property (before being moved to the correct property).

COMPLAINT

73. The later Underlying Actions also plainly are related claims—as they alleged related facts concerning improper composition of land application materials, improper conduct related to those land applications, and liability from the resulting pollution conditions at and emanating from the properties in question.

74. Each of the Underlying Actions alleges that Athens misclassified and transported construction and demolition debris disguised as "green waste" to rural Antelope Valley properties where the waste generated airborne particulates, noxious odors, dust, and caused contamination of soil, air, and groundwater.

75. Each Underlying Action identifies similar debris streams, the same general cluster of locations along the western Antelope Valley corridor, and Athens's Crown Recycling facility as a source of the materials. All assert claims concerning related alleged conduct, conditions, and issues.

76. Thus, all the Underlying Actions are "related claims" to *Blenkhorn* and are deemed to have been first made during the 2020 Policy.

77. Likewise, for the same reasons *Blenkhorn* triggered the potential for Coverage D pollution liability coverage under the 2020 Policy, and also based on the *even broader* set of similar allegations in each of the later Underlying Actions, each additional Underlying Action also triggered the potential for coverage.

78. Yet, AIG has denied defense coverage for all the Underlying Actions after *Blenkhorn* based on erroneous and overly narrow interpretations of the allegations and provisions of the AIG Policies. AIG also disregards that the Underlying Actions are related, incorrectly placing these claims under separate AIG policies.

79. AIG then goes on to attempt to apply exclusions unique to those later policies that are not present in the relevant 2020 Policy. Furthermore, the cited exclusions would not apply to defeat the potential for coverage even if claims were first made during the later AIG Policies.

15

COMPLAINT

80. In its denials, AIG also seeks to avoid its pollution liability obligations by narrowly interpreting the policy coverage provisions referenced above, finding for each section of each coverage part some reason why there could be no potential for coverage. In so doing, AIG repeatedly ignores the requirements that insuring provisions must be interpreted broadly, and that in applying the potential for coverage standard, the allegations of the Underlying Actions must be interpreted as broadly as possible to determine if there is any potential for coverage whatsoever. (Here the potential for coverage is plain and obvious, with respect to multiple coverage parts.)

81. As just one of many examples, AIG improperly recharacterizes the non-owned sites where the land applications took place as "waste disposal facilities," subject to additional requirements for coverage.

82. In sum, the Underlying Actions are related, and all trigger the potential for coverage under the claims-made pollution legal liability Coverage D of the 2020 Policy. Yet AIG has refused to acknowledge or provide the required defense for those actions.

**D. AIG's Duty To Defend The Underlying Actions Also Is Triggered Under The Occurrence-Based Coverages In The AIG Policies**

83. AIG furthermore also owes a defense under the various occurrence-based pollution liability coverages contained in Coverage E of the 2018 AIG Policy, and later AIG Policies—across the time period when the alleged pollution harms were taking place (regardless of when a claim against Athens was first made).

84. The Underlying Actions allege pollution conditions and resulting harms starting in 2018. For example, the *Blenkhorn* complaint expressly ties the alleged dumping, releases, and exposure to land applications taking place starting in November 2018.

16

COMPLAINT

85.    The subsequent Underlying Actions contain allegations tied to land applications that would have taken place over several years, and the ongoing subsequent alleged harms.

86.    Yet, AIG once again has adopted an improperly narrow reading of its policies and the allegations in the Underlying Actions, to outright deny any potential for coverage except for *Blenkhorn*, notwithstanding the plain potential applicability of the additional occurrence-based pollution liability coverages.

## Claim One

## (Declaratory Relief: Duty to Defend the Underlying Actions)

87.    Athens incorporates herein by reference paragraphs 1 through 86, inclusive.

88.    An actual controversy has arisen and now exists between Athens and AIG concerning the existence and extent of AIG's prior and current defense coverage obligations under the 2020 Policy and other AIG Policies for the Underlying Actions.

89.    AIG's duty to defend was triggered by the various allegations in the *Blenkhorn* Action that raise the potential for coverage under the claims-made Coverage D in the 2020 Policy. *Blenkhorn* was a claim first made and reported during the 2020 Policy.

90.    The subsequent Underlying Actions are related to the *Blenkhorn* Action and are thus all treated as claims first made during the 2020 Policy, pursuant to the terms of the 2020 Policy. The subsequent Underlying Actions also all contain various allegations sufficient to each trigger the duty to defend under the claims-made Coverage D in the 2020 Policy.

91.    All other pre-conditions to defense coverage under the 2020 Policy, if any, for the Underlying Actions have been met. At all relevant times, all required premiums were paid, and the 2020 Policy was in full force and effect.

COMPLAINT

92. Accordingly, AIG has had a duty to defend the Underlying Actions that has existed from the inception of each action, or alternatively from the first notice to AIG, and continues for as long as Athens needs a defense in those actions, including any appeals.

93. Likewise, AIG's duty to defend each of the Underlying Actions has been triggered under one or more of the AIG Policies containing the occurrence-based pollution liability coverage provisions, such as Coverage E under the 2018 Policy.

94. Notwithstanding these defense coverage obligations within the AIG Policies, AIG has taken a limited and unduly narrow view of its defense obligations for the Underlying Actions.

95. AIG has acknowledged defense coverage for the *Blenkhorn* Action, but while taking the position that most of the referenced coverages discussed herein cannot apply, and while reserving its rights. Indeed, AIG has narrowed its reading of its obligations for *Blenkhorn* since the filing of the other Underlying Actions.

96. With respect to the other Underlying Actions, AIG has outright denied any potential for coverage.

97. A judicial declaration of the existence, timing, and extent of AIG's duty to defend each of the Underlying Actions under the 2020 Policy and the other AIG Policies is therefore necessary and appropriate.

## Claim Two

## (Breach of Contract: Duty To Defend—Denied Underlying Actions)

98. Athens incorporates herein by reference paragraphs 1 through 97 inclusive.

99. AIG has had and continues to have a duty to defend each of the Underlying Actions.

18

COMPLAINT

100.   All the referenced AIG Policies are enforceable contracts, and Athens fulfilled all obligations under them, including payment of all premiums.  At all relevant times, the AIG Policies remained in full force and effect.

101.   Athens requested defense coverage from AIG for the Underlying Actions, and met all pre-requisites to such defense coverage, if any, for each of the Underlying Actions.

102.   Nevertheless, with the exception of *Blenkhorn*, AIG has denied coverage and has refused to acknowledge any defense obligation for the Underlying Actions.

103.   Furthermore, with the exception of *Blenkhorn*, AIG has not paid a single penny in defense costs or otherwise provided or contributed to the defense of the Underlying Actions.

104.   Thus, AIG has been in breach of its duty to defend and any other defense coverage obligations under the Policies with respect to those actions.

105.   As a direct and proximate result of these breaches, Athens has sustained substantial losses, including the fees and expenses charged by defense counsel that Athens has incurred and will continue to incur for the defense of the denied Underlying Actions.

### Claim Three

### (Breach of Covenant of Good Faith and Fair Dealing)

106.   Athens incorporates herein by reference paragraphs 1 through 105, inclusive.

107.   At all relevant times, AIG owed Athens a duty of good faith and fair dealing under the 2020 Policy and all other relevant AIG Policies, including the duty to give equal (if not greater) consideration to Athens's interests, to fully and fairly investigate claims, to refrain from taking unreasonable positions, to refrain from unreasonably withholding benefits due under the policies, and to timely

COMPLAINT

provide the full defense required whenever there existed any potential for coverage.

108. AIG repeated and substantially breached this covenant, as many instances described herein illustrate.

109. Among other things, AIG: unreasonably ignored the relatedness of the various Underlying Actions in order to attempt to apply more recent policies with additional exclusions, unreasonably ignored many highly relevant coverage parts in order to minimize potential coverage, unreasonably disregarded or otherwise did not properly apply the potential for coverage standard that governs the duty to defend, unreasonably asserted narrow interpretations of coverage provisions that must be interpreted broadly and broad interpretations of exclusions that must be interpreted narrowly, and failed to properly investigate defense coverage for the additional Underlying Actions.

110. AIG's misconduct has resulted in improper denials where defense coverage is owed and has left Athens to have to defend itself at great expense in multiple complex pollution liability lawsuits—exactly the types of claims for which the AIG pollution liability coverage that Athens purchased year after year is intended.

111. Likewise, AIG's misconduct has resulted in Athens having to sue AIG to enforce its coverage rights.

112. Accordingly, as a direct and proximate result of AIG's bad faith, Athens has been damaged in an amount to be proven at trial including, but not limited to, the fees incurred prosecuting the coverage claims in this litigation.

113. The severity and persistence of AIG's misconduct—including knowingly advancing baseless coverage positions, manipulating policy years, and ignoring controlling California standards—all in an effort to avoid or minimize defense coverage liability under policies sold for this exact purpose, demonstrates a level of willfulness and conscious disregard for its policyholders' rights

COMPLAINT

warranting an award of punitive damages to punish AIG and deter similar misconduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Athens prays for judgment against AIG as follows:

**On Claim One**

1. Ordering and declaring that AIG has a duty to defend each Underlying Action and is obligated to provide complete defense coverage for past, ongoing, and future defense costs, under (i) Coverage D of the 2020 Policy, (ii) Coverage E of the 2018 Policy, and/or (iii) any other applicable provisions of the AIG Policies.

2. For costs of this lawsuit.

3. For such other and further relief as the Court deems just and proper.

**On Claim Two**

1. Ordering and declaring that AIG has breached its duty to defend each Underlying Action (except *Blenkhorn*, to the extent AIG continues to defend *Blenkhorn*).

2. For a damages award of all attorneys' fees, costs, and expenses incurred for the defense of those Underlying Actions, plus interest.

3. For costs of this lawsuit.

4. For such other and further relief as the Court deems just and proper.

**On Claim Three**

1. Ordering and declaring that AIG has breached the covenant of good faith and fair dealing under the AIG Policies with respect to the claims for defense coverage for the Underlying Actions.

2. For a damages award of attorneys' fees, costs, and expenses prosecuting the coverage claims in this action, plus interest, along with all other appropriate compensatory, consequential, extra-contractual, and exemplary damages available as relief for AIG's unreasonable conduct.

3. For costs of this lawsuit.

COMPLAINT

4.      For such other and further relief as the Court deems just and proper.


Dated: March 24, 2026                    HALPERN MAY YBARRA GELBERG LLP
                                                          Marc D. Halpern
                                                          A. Carley Palmer
                                                          Gwendolyn M. Toczko

                                                   By:  /s/ Marc D. Halpern
                                                          MARC D. HALPERN

                                                   Attorneys for Plaintiff
                                                   ARAKELIAN ENTERPRISES, INC. D/B/A
                                                   ATHENS SERVICES

COMPLAINT